**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DANIEL B. FISHER,

Plaintiff,

v. No. 1:23-cv-28 JB/KRS

WALMART, REGISTERED AGENT,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on the parties' respective motions for sanctions. On January 6, 2025, Defendant Walmart ("Defendant") filed a Motion for Sanctions ("Defendant's Motion for Sanctions"). (Doc. 52). *Pro se* Plaintiff Daniel B. Fisher ("Plaintiff") did not timely file a response and, as such, Defendant filed a Notice of Briefing Complete, (Doc. 54), on January 28, 2025. On February 6, 2025, Plaintiff filed a "Response to Briefing," (Doc. 55), specifically in response to Defendant's Notice of Briefing. On February 7, 2025, Plaintiff filed Motion for Sanctions Response to Defendant's Motion for Sanctions Motion for Hearing, (Doc. 56),[1] ("Plaintiff's Motion for Sanctions"). On February 18, 2025, Defendant replied to Plaintiff's Motion for Sanctions. (Doc. 57).[2] The presiding judge referred this case to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to recommend an ultimate disposition of the case. (Doc. 11). Having considered the parties' submissions, the relevant law, and the record of the case,

[1] Plaintiff's Motion for Sanctions has three parts: (1) Plaintiff seeks sanctions against Defendant for delaying, obfuscating, and for purportedly submitting false evidence to the Court; (2) contains an untimely response to Defendant's Motion for Sanctions, which the Court will address separately; and (3) a Motion for a Hearing. (Doc. 56).

[2] Plaintiff did not file a Notice of Completion per D.N.M.LR-Civ.7.4(e). The Court, *sua sponte*, finds Plaintiff's Motion for Sanctions is ripe as the last filing in relation to Plaintiff's Motion for Sanctions was February 18, 2025, and Plaintiff has not requested leave of the Court to file an untimely reply.

the undersigned recommends that the Court DENY Plaintiff's Motion for Sanctions, DENY Plaintiff's Motion for a Hearing, and GRANT Defendant's Motion for Sanctions.

## I. Background[3]

On December 12, 2022, Plaintiff filed a lawsuit against Defendant in the State of New Mexico, County of Santa Fe, First Judicial District Court. (Doc. 1-1) at 5–13. Plaintiff alleges he was injured at a Wal-Mart store in Los Lunas, New Mexico on September 18, 2021, when he slipped on the floor. (Doc. 1) at 2; (Doc. 1-1) at 5–6. Plaintiff asserts he experiences spasms in his neck, shoulder, pain in his back/arm, and numbness in his hand as a result of the incident. (Doc. 1-1) at 6–7. Plaintiff seeks $200,000 for "medical costs incurred, loss of past and future income, diminished quality of life due to debilitating injuries." (Doc. 1-1) at 5. Defendant removed the case to this Court on January 10, 2023, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. *Id.* Defendant also filed an Answer to Plaintiff's Complaint on January 10, 2023. (Doc. 3).

Subsequently, on May 8, 2024, the parties met and conferred to create a provisional discovery plan. *See* (Doc. 27) at 1. That same day, Defendant sent Plaintiff copies of HIPAA releases in accordance with D.N.M.LR-Civ. 26.3(d)(3). *See* (Doc. 33-1). Plaintiff's Initial Disclosures, executed HIPAA releases, and medical records in his possession were due May 22, 2024. *See* Fed. R. Civ. P. 26(C); *see also* (Doc. 33-1) at 7, 10. Defendant inquired as to the status of the aforementioned documents on May 24, 2024, June 4, 2024, and June 7, 2024. (Doc. 33-1) at 7, 10. On June 9, 2024, the parties met to discuss Plaintiff's past-due Initial Disclosures and HIPAA releases. (Doc. 33-1) at 11. Defendant once again inquired as to the status of Plaintiff's

---

[3] The parties seek extraordinary sanctions in their respective motions. The Court has meticulously detailed the procedural and discovery history in this case to provide the complete context of the parties' efforts in moving this case forward. The Court thus, *sua sponte*, takes judicial notice of the filings in the CM/ECF docket of the instant case. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("a court may . . . take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of its public records.")

Initial Disclosures and medical releases on June 13, 2024. (Doc. 33-1) at 21. As of June 25, 2024, Plaintiff still had not met his duty to disclose the aforementioned discovery. (Doc. 33-1) at 24. On June 26, 2024, Defendant moved to compel Plaintiff's Initial Disclosures and HIPAA releases as well as other discovery responses in which Plaintiff failed to timely supplement. (Doc. 33). Plaintiff did not respond to the motion and, as such, this Court granted Defendant's motion. *See* (Doc. 60).

In the Joint Status Report, filed June 10, 2024, Defendant identified Caren Nicholson, Elvira Garcia, Shawnae Goodson, and Tisha Finch as witnesses who would testify about their respective knowledge of the alleged incident. (Doc. 27) at 5. Plaintiff likewise identified Caren Nicholson, Elvira Garcia, and other unidentified Walmart employees. (*Id.*) at 4.

On August 15, 2024, Defendant requested to set Plaintiff's deposition between September 2, 2024, and September 13, 2024. (Doc. 52-1) at 3. That same day, Plaintiff responded he was unavailable those dates, did not offer alternative dates, and demanded Defendant respond to Plaintiff's interrogatories. (Doc. 52-1) at 2. In reply, Defendant requested Plaintiff's availability from August 15, 2024, to September 30, 2024, for his deposition. (*Id.*) Defendant also reminded Plaintiff that its discovery responses were not due for 11-days. (*Id.*)

On August 21, 2024, Plaintiff suggested that all depositions should be placed on hold until Defendant produced its discovery responses. (*Id.*) Defendant explained Plaintiff's deposition was separate from non-party witnesses and warned it would unilaterally notice Plaintiff's deposition if he continued to refuse to provide his availability. (Doc. 52-1) at 1. Plaintiff responded, "Sorry, but you have failed to comply at various junctures and do not dictate. . . . Call me combative if you wish" [*sic*]. (*Id.*) Defendant requested names and dates for the non-party depositions as well as dates for Plaintiff's deposition. (*Id.*) Plaintiff replied that he was "ready . . . at any time." (*Id.*) He

also did not name witnesses, but demanded Defendant produce "all" its witnesses for depositions. (*Id.*)

On September 26, 2024, Defendant contacted Plaintiff to check his availability in October for his deposition. (Doc. 52-2) at 4. Defendant also inquired as to which witnesses Plaintiff wished to depose. (*Id.*) Plaintiff responded on September 29, 2024, that he was available after October 1, 2024. (*Id.*) He did not provide any dates he was unavailable. (*Id.*) Plaintiff also requested to depose "[t]he three female managers who were present the day of the incident . . . ." (*Id.*) On October 1, 2024, Defendant asked Plaintiff to "specifically identify the names of the individuals you wish to depose" to avoid confusion. (Doc. 52-2) at 3–4.

On October 4, 2024, Defendant asked Plaintiff to hold October 30, 2024, for his deposition. (Doc. 52-2) at 3. Defendant also stated that it believed one of the individuals Plaintiff wished to depose was Tisha Finch, and she was available October 31, 2024. (*Id.*) On October 7, 2024, Plaintiff claimed he was unavailable October 30–31, 2024. (*Id.*) Plaintiff also informed Defendant that he sought to depose Caren Nicholson, Tisha Finch, and Elvira Garcia that week. (*Id.*) Within the hour, Defendant stated it could not move forward with depositions that week. (*Id.*) However, Defendant inquired if Plaintiff wanted to proceed with Tisha Finch's deposition on October 31, 2024. (*Id.*) Defendant also stated it would provide dates for the other two deponents. (*Id.*) Defendant further asked Plaintiff for his availability between November 1–11, 2024, for his deposition. (*Id.*) The next day, Plaintiff reiterated that he was "available all of October except the last two days." (Doc. 52-2) at 1. Defendant responded on October 9, 2024, again asking for Plaintiff's availability from November 1–11, 2024, as well as the requested dates for the non-party depositions. (*Id.*) Later that day, Defendant asked if Plaintiff could sit for his deposition on October 29, 2024, based on Plaintiff's prior representations that he was "ready . . . at any time" and

available between October 1, 2024, and October 29, 2024. (Doc. 52-3) at 2. Defendant also provided an update for the non-party depositions, including dates for Tisha Finch and Caren Nicholson. (*Id.*)

On October 14, 2024, Plaintiff stated he had travel plans "the last days of October and the first days of November. We can schedule depositions for November 5, 2024." (Doc. 52-3) at 1. On October 15, 2024, Defendant responded that it would set Plaintiff's in-person deposition for November 5, 2024. (*Id.*) It also reiterated Caren Nicholson's availability. (*Id.*) On October 16, 2024, Defendant formally noticed Plaintiff's deposition for November 5, 2024, at 9:00 A.M. (Doc. 52-4). Defendant again provided dates for the three non-party depositions Plaintiff requested. (*Id.*)

On October 24, 2024, Defendant contacted Plaintiff again to confirm dates for the non-party depositions. (Doc. 52-5) at 2–3. Over the next four days, Plaintiff and Defendant corresponded regarding the applicable federal rules for depositions, including that Zoom depositions must occur before a certified court reporter. (Doc. 52-5) at 1–2. On October 29, 2024, Defendant notified Plaintiff that it had not received formal notices for the non-party depositions and, consequently, the previously provided dates were released. (Doc. 52-5) at 1. Plaintiff was reminded of his November 5, 2024, deposition. (*Id.*)

On November 4, 2024, Plaintiff claimed he was in the hospital with food poisoning and would not appear for his deposition the next day. (Doc. 52-6) at 1. Plaintiff did not file a notice of Non-Appearance or move for a protective order in compliance with Local Rule 30.2. *See* D.N.M.LR-Civ. 30.2. Defendant, in turn, inquired into Plaintiff's availability in order to reset his deposition. (*Id.*)

On November 11, 2024, Defendant contacted Plaintiff again to obtain his deposition availability. (Doc. 52-7) at 1. Defendant also asked Plaintiff to supplement his response to

Interrogatory Number 11 to include information related to his recent hospitalization. (*Id.*)

By November 18, 2024, Plaintiff had yet to provide dates for his deposition and, accordingly, Defendant unilaterally noticed his deposition for December 9, 2024, at 9:30 A.M. (Doc. 52-8) at 1. Defendant further notified Plaintiff that it would seek to compel supplemental responses to Interrogatory Number 11 if he did not supplement by November 22, 2024. (*Id.*)

On November 25, 2024, Plaintiff responded stating he would be out of town and unavailable from December 9, 2024 "until after February 5, 2025." (Doc. 52-9) at 2. Plaintiff also demanded that his deposition and the three (3) non-party depositions occur the same day in-person or, alternatively, via Zoom if they must be completed on separate days. (*Id.*) Plaintiff did not propose dates for any of the aforementioned depositions. (*Id.*) Defendant immediately asked Plaintiff when he could discuss next steps because discovery was set to close December 16, 2024. (*Id.*) Later that day, Defendant asked Plaintiff if he could sit for his deposition on December 6, 10, 11, 13, or 16 given that discovery was set to close soon. (Doc. 52-9) at 1. Defendant further explained that setting four (4) depositions for a single day was impossible. (*Id.*) Nevertheless, Defendant was still willing to move forward with all depositions as soon as Plaintiff proposed dates. (*Id.*) Finally, Defendant informed Plaintiff that he would need to move to amend the discovery deadline if he was medically unable to proceed prior to the close of discovery. (*Id.*)

On December 2nd and 6th, 2024, Defendant followed up with Plaintiff about setting his deposition and whether he intended to appear for his December 9, 2024, deposition. (Doc. 52-10) at 1. On December 8, 2024, Defendant reminded Plaintiff that it was moving forward with his December 9, 2024, deposition. (Doc. 52-11).

On December 9, 2024, Plaintiff e-mailed Defendant claiming he had not received any communications since his November 25, 2024, e-mail stating he was unavailable until the new

year. (Doc. 52-12) at 1. Plaintiff accused Defense counsel of manipulating electronic communications and medical reports. (*Id.*) Defendant responded,

> We chose a deposition date based on your repeated failure to provide availability. I followed up on your 11/25 email on 11/25 at 4:28, on 12/2 at 9:57, on 12/6 at 10:16, and on 12/8 at 11:56. We have given you multiple opportunities to provide alternative dates. Your deposition is proceeding this morning at 9:30 a.m. I hope that you will appear. If you do not, we will seek appropriate relief from the Court.

(*Id.*) Plaintiff did not appear for his deposition. (Doc. 52-13). Nor did Plaintiff move for a protective order or serve a notice of non-appearance. *See* (Doc. 52); *see also Daniel B. Fisher v. Walmart*, 1:23-cv-28 JB/KRS (Docs. 1–60). Defendant then e-mailed and sent a certified letter to Plaintiff summarizing the parties' communications and attempts to schedule Plaintiff's deposition. (Doc. 52-14). In the letter, Defendant again proposed December 10, 11, 13, and 16 for Plaintiff's deposition. (Doc. 52-14) at 2; *see also* (Doc. 52-16). Defendant also notified Plaintiff that it would move to dismiss the case if Plaintiff refused to sit for his deposition. (*Id.*)

On December 11, 2024, Plaintiff responded via e-mail stating he "reject[ed]" Defendant's summarization, intimated Defense counsel "engaged in time trickery" and never sent two of the alleged e-mail communications, and claimed Defendant repeatedly refused to schedule depositions of the three (3) non-party deponents. (Doc. 52-15) at 2–3. Plaintiff then proposed the parties stipulate to extend the discovery deadline. (Doc. 52-15) at 3. Defendant disagreed with Plaintiff's claims and again inquired as to whether Plaintiff would sit for a deposition prior to the close of discovery. (Doc. 52-15) at 2. Plaintiff replied he was unable to sit for a deposition prior to December 16, 2024, and demanded deposition dates for the three (3) non-party witnesses. (Doc. 52-15) at 1. In response, Defendant again inquired if Plaintiff was available prior to the close of discovery, including weekends. (*Id.*) Defendant further noted that it had repeatedly made a good faith effort to set all four (4) depositions. (*Id.*) Plaintiff merely reiterated his prior contentions and

demanded Defendant provide dates for the non-party depositions. (*Id.*)

Discovery closed on December 16, 2024. (Doc. 31) at 2. On December 30, 2024, Plaintiff moved to extend the discovery deadline to conduct the abovementioned non-party witness depositions. (Doc. 50). On March 31, 2025, this Court denied the motion to extend discovery on the basis that Plaintiff failed to file the motion prior to the close of discovery in accordance with this Court's Scheduling Order, the Local Rules, and Federal Rules of Civil Procedure. (Doc. 64) at 4. Plaintiff also failed to establish good cause to amend the Scheduling Order. (*Id.* at 4–5). The Court also cautioned Plaintiff that he must "conduct himself with the same decorum and common courtesy expected of attorneys, and must refrain from asserting an issue 'unless there is a basis in law and fact.'" (*Id.* at 4) (citing NMRA 16-301, New Mexico Rules of Professional Conduct, *see also* NMRA 16-305(D)).

Now before this Court are the parties' respective motions for sanctions and Plaintiff's motion for a hearing. *See* (Docs. 52 and 56).

## II. <u>Legal Standard</u>

When considering whether dismissal is an appropriate sanction for discovery violations, the Court looks to the factors outlined in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). These factors include the "degree of actual prejudice to the defendant," "the amount of interference with the judicial process," "the culpability of the litigant," "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance," and "the efficacy of lesser sanctions." *Id.* at 921. District courts enjoy "very broad discretion" in this area. *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). Nonetheless, dismissal remains a harsh consequence applicable "only when the discovery violation arises out of willfulness, bad faith, or some fault of the party." *Stenson v. Edmonds*, 86 F.4th 870, 877–78 (10th Cir. 2023).

Because Plaintiff is a *pro se* litigant, the Court must construe his pleadings liberally and hold him to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires the Court to make some allowance for Plaintiff's "failure to cite proper legal authority, [his] confusion of various legal theories, [his] poor syntax and sentence construction, or [his] unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (*quoting Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett*, 425 F.3d at 840.

## III. <u>Discussion</u>

### A. Defendant's Motion for Sanctions (Doc. 52)

Defendant moves for dismissal on the grounds that Plaintiff continuously and willfully disregarded his discovery obligations thereby causing Defendant significant prejudice in evaluating its defenses. (Doc. 52) at 6. For instance, Defendant cannot adequately prepare a defense in advance of trial without the opportunity to evaluate the veracity of Plaintiff's allegations, which are disputed by the video surveillance. (*Id.*) Further, Plaintiff's medical and billing records are susceptible to challenges Plaintiff must testify to under oath as they include unsigned and handwritten records. (*Id.*) Defendant also maintains—as it has in other filings before this Court—that it repeatedly attempted to accommodate Plaintiff's schedule, advise Plaintiff of discovery deadlines, inform him of the Local Rules and Federal Rules of Civil Procedure, and afforded Plaintiff multiple extensions and reminders for depositions and discovery. (*Id.*) Thus Plaintiff is solely culpable for the discovery issues and perpetual motion practice. (*Id.*) Defendant

acknowledges that Plaintiff has not been warned nor sanctioned by this Court prior to the filing of Defendant's Motion for Sanctions. Yet, Defendant asserts dismissal is warranted because lesser sanctions would be ineffective as Plaintiff "has engaged in a clear pattern of obstruction and disregard for the basic rules of discovery . . . ." (*Id.* at 9).

**B. Plaintiff's Responses (Docs. 55, 56)**

Before summarizing Plaintiff's contentions, the Court must address the timeliness of Plaintiff's "responses." Plaintiff's responses, (docs. 55, 56), were filed on February 6th and 7th, 2024, respectively. Plaintiff's response to Defendant's Motion for Sanctions was due January 21, 2025.[4] This is not the first, second, or third time Plaintiff has failed to timely file a response or reply. *See Daniel B. Fisher v. Walmart*, 1:23-cv-28 JB/KRS, (Docs. 60, 61, 62, 64). The Court is empathetic to the alleged circumstances in Plaintiff's life and understands the difficulties of proceeding *pro se*. As the Court repeatedly stated, parties who proceed *pro se* are afforded some latitude. *See* (Docs. 21, 60, 62, 64), *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But even given this extra latitude, a *pro se* litigant must still comply with the Rules. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). Under the Local Rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). Because Plaintiff failed *once again* to file a response within the allotted time under the Rules, the Court recommends striking Plaintiff's untimely responses. Accordingly, the Court finds Defendant's Motion for Sanctions is unopposed and recommends that Defendant's Motion for Sanctions be granted.

The Court, however, acknowledges that dismissal is a severe sanction. For that reason

---

[4] Plaintiff's response was due 14-days after Defendant filed its Motion for Sanctions on January 6, 2025. D.N.M.LR-Civ. 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). Fourteen days fell on January 20, 2025, a federal holiday and, as such, Plaintiff's response was due the next day, January 21, 2025. *See* FED. R. CIV. P. 6(a)(C).

alone, the Court addresses Plaintiff's untimely responses to the extent they bare substantive relevant contentions. In his initial response, Plaintiff argues Defendant's Motion for Sanctions is meritless and made in bad faith. (Doc. 55). Plaintiff refutes Defendant's assertions in their entirety. (*Id.*) Plaintiff claims Defendant refused to identify the non-party deponents, supplied limited or no dates for depositions, made unilateral decisions pertaining to his deposition, and reneged on a stipulated motion to extend discovery deadlines. (*Id.*) In his second response, Plaintiff reiterates the same claims. *See* (Doc. 56) at 1–3.

**C. Plaintiff's Motion for Sanctions and Motion for Hearing (Doc. 56)**

As addressed earlier, Plaintiff's second response also includes a Motion for Sanctions and Motion for Hearing. *See* (Doc. 56). Plaintiff's Motion for Sanctions alleges sanctions are warranted because Defendant engaged in gamesmanship by obstructing discovery for failing to produce the video of the purported incident, identify employee witnesses, and refuse to produce witnesses for depositions. (*Id.*) at 1–3. He also argues that Defendant has made unfounded claims regarding the legitimacy of Plaintiff's handwritten medical records and the proper course of action is for Defendant to depose the treating doctor, Dr. Thomas Kabisch ("Dr. Kabisch") and not Plaintiff. (*Id.*) at 3. Plaintiff further claims Defendant was uncooperative in scheduling his deposition, has presented false evidence to this Court, and repeatedly threatened Plaintiff throughout the discovery process. (*Id.*) at 1–3. Plaintiff does not state what sanctions he seeks. *See* (Doc. 56). He further does not argue why a hearing is necessary or what issue or motion he would like to address before the Court. (*Id.*) In support of Plaintiff's Motion for Sanctions, Plaintiff attached a medical letter from Dr. Sergio Arturo Guzmán Pérez ("Dr. Guzmán Pérez) dated December 9, 2024, excusing Plaintiff from his November 5, 2024, deposition. (Doc. 56) at 5, 7. The English translation of the letter, which Plaintiff provided, states Plaintiff has been a patient of Dr. Guzmán Pérez's since

September 2021. (Doc. 56) at 7. It further states that Plaintiff was seen on November 3, 2024, was ordered to rest for three days and was "improving with the prescribed treatment." (*Id.*) Plaintiff also attached two partial e-mail correspondences between him and Defense counsel. (Doc. 56) at 6, 8.

**D. Defendant's Reply and Response (Doc. 57)**

Defendant's reply addresses Plaintiff's untimely responses and responds to Plaintiff's Motion for Sanctions. First, and as addressed earlier, Defendant contends Plaintiff's replies are untimely and thus should be disregarded. (Doc. 57) at 2–3. Second, the record established by Defendant demonstrates it has been diligent in moving the case forward, overly cooperative with Plaintiff, and belies any of Plaintiff's self-serving contentions. (*Id.*) at 2–4. Third, Defendant's only means to ascertain the legitimacy of Dr. Kabisch's medical records is to depose Plaintiff. (*Id.*) at 4. Dr. Kabisch passed away approximately one month after Plaintiff disclosed the medical records. (*Id.*) Defendant did not have time to depose the doctor and, hence, is severely prejudiced by Plaintiff's continuing noncompliance for his deposition. (*Id.*) Finally, Plaintiff's discovery violations are ongoing as evidenced by his motion/response. (*Id.*) at 5. Plaintiff never disclosed Dr. Guzmán Pérez as a treating physician. (*Id.*) Yet, Dr. Guzmán Pérez's medical letter states he has been treating Plaintiff since September 2021. (*Id.*) (citing (Doc. 56) at 5, 7). For these reasons, Defendant asserts dismissal is warranted.

**E. The Court Recommends Granting Defendant's Motion for Sanctions and Denying Plaintiff's Motion for Sanctions and Motion for Hearing**

It is in the Court's inherent authority to fashion an appropriate sanction for discovery abuse by a party, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991), or to "do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants."

*Shangold v. Walt Disney Co.*, No. 03-9522, 2006 U.S. Dist. LEXIS 748, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (unpublished) (plaintiffs materially misrepresented timing of crucial communication and court dismissed case with prejudice and awarded fees and costs). The Court's inherent power "extends to a full range of litigation abuses," including fraud upon the court. *Chambers*, 501 U.S. at 46. Moreover, when a litigant's conduct abuses the judicial process, the Supreme Court recognized that dismissal of a lawsuit is within the Court's inherent authority. *Id.* at 45; *see also Archibeque v. Atchison, Topeka, and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir 1995 ("Our case law makes it clear that a district judge may dismiss an action for discovery violations."); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001) (finding no abuse of discretion by district court's dismissal of case because dismissal "was the only sanction that would effectively punish [plaintiff], lessen the prejudice to [defendant], and protect the integrity of the proceeding"); *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (when a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the court's inherent authority).

In *Chavez v. City of Albuquerque*, CIV 00-307 WJ/KBM, Judge Johnson dismissed a plaintiff's lawsuit when evidence was presented that the plaintiff testified at trial and admitted that he had lied in his deposition and discovery responses. Memorandum Opinion and Order (D.N.M. Aug. 18, 2003 (Doc. 170)). Judge Johnson concluded that "willful deceit . . . made a mockery of the judicial process." *Id.* at 5 (citing *Chambers*, 502 U.S. 32 (tampering with the administration of justice "is a wrong against the institutions set up to protect and safeguard the public," quoting *Hazel v. Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 246 (1944)); and citing *ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 326, 114 S. Ct. 835, 127 L. Ed. 2d 152 (1994) ("the gravest consequence of lying under oath is the affront to the law itself")). Finding Chavez's lies to

be an affront to the truth-finding process, the judge sanctioned Chavez by dismissal of the lawsuit.

Chavez appealed the dismissal, and the Tenth Circuit affirmed, stating:

> It has long been understood that "[c]ertain implied powers must necessarily result to our courts of justice from the nature of their institutions" powers "which cannot be dispensed with in a court because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quoting *United States v. Hudson*, 7 Cranck 32, 34, 11 U.S. 32, 3 L.Ed. 259 (1812); *see also Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997). Among the multifarious manifestations of the court's inherent power is the authority to vacate a judgment when a fraud has been perpetuated on the court, *Chambers*, 501 U.S. 32 at 44, 111 S. Ct. at 2132, such as when a party has perjured himself during the discovery process. *Archibeque v. Atchison Topeka & Santa Fe Railway Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

*Chavez v. City of Albuquerque*, 402 F.3d at 1043–44.

Chavez thus authorizes a court to impose the most severe of all sanctions—dismissal—when the court concludes that a party lied during pretrial discovery. *See Archibeque*, 70 F.3d at 1174–75.

While this Court relies on *Chambers v. NASCO, Inc.*, the Tenth Circuit precedent, including *Chavez v. City of Albuquerque* and *Archibeque v. Atchison Topeka & Santa Fe Railway Co.*, it is significant to note that New Mexico's own substantive law is in accord.

In *Sandoval v. Martinez*, 109 N.M. 5, 780 P.2d 1152, 1989-NMCA 042 (Ct. App. 1989), Judge Harris Hartz (then a judge on New Mexico's Court of Appeals and now a Tenth Circuit Judge) affirmed the state district court's dismissal of Deborah Sandoval's lawsuit on the ground that she lied during pretrial discovery. As in the present case, after Sandoval made inaccurate and misleading responses to pretrial discovery, she made no correction or clarification to her earlier responses. *Sandoval*, 780 P.2d at 1153. Defendants, through their own efforts, discovered that Sandoval had been deceitful in pretrial discovery. Defendants moved for Rule 37 sanctions, contending Sandoval failed to meet her discovery obligations and, in bad faith, provided false

answers. The trial court agreed and dismissed Sandoval's lawsuit.

On appeal, the issue was whether Sandoval's case should have been dismissed. In affirming the dismissal, the New Mexico Court of Appeals referred to New Mexico's seminal discovery sanction case, *United Nuclear v. General Atomic*, 1980-NMSC 094, 96 N.M. 155, 629 P.2d 231 (1980), when the trial court entered a default judgment against a defendant as a sanction for obstructing discovery. In *United Nuclear*, the trial court found that a defendant "stonewalled" and wrongfully obstructed the discovery process.

The conduct in this case involves Plaintiff's obstruction of the discovery process by repeatedly failing to cooperate with Defendant in scheduling depositions, failing to produce discovery absent a court order, as well as disregarding Local Rules, the Federal Rules of Civil Procedure, and the Scheduling Order. Further, Plaintiff's "evidence" in support of his own motion demonstrates that he provided incomplete and/or inaccurate interrogatories responses with respect to his medical records and treatment.

In *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992), the court cautioned that before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party; and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921. The court ordinarily considers and addresses all of the above factors before imposing dismissal as a sanction. However, often some of the five factors will take on more importance than others." *Id.* at 922. *See Archibeque*, 70 F.3d at 1174 (five *Ehrenhaus* factors are not necessarily equiponderant).

The Court further observes that discovery is intended, in part, to make a trial less a "game of 'blindman's bluff' and more a fair contest with the basic issues and facts disclosed to the fullest

practicable extent." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (citation omitted). As aptly stated by one district court:

> [C]ourts are forums in which people may obtain fair resolution of their disputes in accordance with rules intended to preserve that fairness. Courts have the inherent responsibility to protect the integrity of that form and its processes, and courts should not abrogate that duty to a jury.

*United States v. Boeing Co.*, 835 F. Supp. 2d 1020, 2011 WL 6182109, at *32 (D. Or. 2011) (unpublished). Moreover, "conduct that severely damages the reliability of, and the public's confidence in, the judicial system" may warrant severe sanctions, including dismissal of a claim and monetary sanctions. *Id.* at *33–34. "Litigants who deliberately engage in such egregious conduct as [the plaintiff]'s committed here should not be permitted to continue to benefit from the judicial process they have corrupted for personal gain." *Id.* at *32.

1. <u>Degree of Actual Prejudice to Defendant</u>

The Court finds that Defendant demonstrated sufficient actual prejudice to warrant sanctions against Plaintiff. The *Sandoval* and *United Nuclear* analyses are persuasive here. In this case, as in *Sandoval*, Plaintiff made a claim for physical injury and limited access to medical providers. Here, Plaintiff identified two medical providers in his interrogatories. *See* (Doc. 57-1). In November 2024, Plaintiff told Defendant he was initially unable to attend his deposition due to food poisoning. (Doc. 52-6). Plaintiff never modified his interrogatories to include the purported treating doctor and/or facility. Then, in his papers to the Court, Plaintiff claimed the food poisoning resulted in "enduring kidney failure," which "laid [him] up for two weeks." (Doc. 56 at 1–2). There is no evidence before this Court that Plaintiff ever provided Defendant with any medical records relating to treatment he received post-food poisoning, especially medical records pertaining to

"enduring kidney failure."[5]

Furthermore, Plaintiff's briefing exposes his continuing failure to adhere to the Court's Rules. Dr. Guzmán Pérez treated Plaintiff from September 2021 until at least December 9, 2024. (Doc. 56) at 5, 7. Yet, Plaintiff did not—and to the Court's knowledge—has not corrected his interrogatories to identify Dr. Guzmán Pérez as a treating provider during the relevant time period. Nor is there any evidence before the Court that Plaintiff produced Dr. Guzmán Pérez's December 9, 2024, medical letter until he attached it to his Motion for Sanctions. Similar to *Sandoval*, Plaintiff had ample opportunities to correct and/or modify his prior interrogatories and failed to do so.

Plaintiff's conduct in the case at bar is also similar to *United Nuclear* in that he has "stonewalled" Defendant during discovery. First, Plaintiff repeatedly failed to comply with the Local Rules and Federal Rules of Civil Procedure by producing executed HIPAA releases. Defendant discussed the HIPAA release forms with Plaintiff during their Rule 16 conference and explained to Plaintiff that under the Rules the forms were mandatory (especially given his medical and personal injury claims). *See* (Doc. 33-1). Defendant gave Plaintiff the benefit of the doubt and repeatedly requested the HIPAA releases before being forced to move to compel. *See* (Doc. 33-1). It was not until a Court order that Plaintiff finally produced said releases nine (9) months after they were due. *See* (Doc. 63) (Plaintiff's Certificate of Service stating he produced HIPAA Releases on March 20, 2025).

Plaintiff's obstruction and refusal to provide complete information required by the Court's

[5] On March 11, 2025, this Court ordered Plaintiff to amend his Initial Disclosures and discovery responses. The Order did not include Interrogatory Number 8, which pertains to Plaintiff's treating medical providers. Notably, Defendant moved to compel supplemental responses on June 26, 2024, nine (9) months before Plaintiff disclosed treatment with Dr. Guzmán Pérez in his Motion for Sanctions, (Doc. 56). Hence, Plaintiff has not presented any evidence that he has supplemented interrogatories related to his medical treatment(s).

Rules—amended Initial Disclosures, medical records, and HIPAA releases—is, in effect, worse than no response. When a party serving an interrogatory receives no response it at least knows it has not received an answer. It may then move for an order to compel responses. If interrogatories or medical records are incomplete, as they were here, Defendant may never have learned that it had not received Plaintiff's complete medical information. "The obstruction to the discovery process is much graver when a party," like Plaintiff, only reveals partial truths than a party who refuses to respond. *Sandoval*, 109 N.M. at 9.

The prejudice to Defendant is parlayed by Plaintiff's deposition evasion tactics. The record undoubtedly demonstrates Plaintiff's continual noncompliance with the deposition process. Plaintiff's availability was either conditional (*i.e.*, he required Defendant produce the non-party deponents the same day as his deposition), he was extremely unavailable (Plaintiff claimed to be unavailable for one to two months at a time), Plaintiff was suddenly unavailable on dates he previously provided, or he was only available after the close of discovery.

Plaintiff contends that it was Defendant who engaged in gamesmanship by refusing to identify the names of the non-party deponents, refusing to provide the contact information for the represented non-party deponents, providing dates Plaintiff stated he was unavailable, and unilaterally setting his deposition. The Court is unpersuaded by Plaintiff's assertions. Matter of fact, the e-mail correspondences between Defense counsel and Plaintiff show no evidence of delaying or obfuscating discovery on part of Defendant. It is Plaintiff who elected to engage in obstructive tactics that necessitated additional expenses to Defendant. Plaintiff brought this lawsuit alleging physical injury and damages. Defendant has a right to gather sworn testimony prior to trial to assess its potential exposure and defenses. This includes questioning a plaintiff about the circumstances leading up to the incident and subsequently as well as a plaintiff's purported injuries

and damages.

Furthermore, under the circumstances in this case, Defendant's 21-day notice for Plaintiff's December 9, 2024, deposition was reasonable. *See* FED. R. CIV. P. 30(b)(1) (stating that, "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action."); *Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp.*, No. CIV 06-1165 JB/DJS, 2007 U.S. Dist. LEXIS 97735, at *17-18 (D.N.M. Oct. 24, 2007) (citing *C & F Packing Co., Inc. v. Doskocil Companies, Inc.*, 126 F.R.D. 662, 678 (N.D. Ill. 1989), (also citing *Mims v. Central Mfrs. Mut. Ins. Co.*, 178 F.2d 56, 58–59 (5th Cir. 1949) (holding that four days' notice of the intention to take fifteen depositions on one day in Boston, Chicago, San Francisco, St. Louis, Alliance, Ohio, Cincinnati, Baltimore, Philadelphia, Birmingham, and Dallas, and seven days' notice of intent to depose a witness in New York was unreasonable under rule 30 of the Federal Rules of Civil Procedure.); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005) (holding that, ten business days' notice is unreasonable when a case is "exceedingly complex, the depositions are to occur virtually hours before the discovery cut-off, and it was obvious—or at least probable—that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices."); *Jones v. United States*, 720 F.Supp. 355, 366 (S.D.N.Y. 1989) (holding that eight days' notice is reasonable under the circumstances when deponent's physical condition was serious enough to prevent him from appearing at trial under rule 32(a)(3)(C) of the Federal Rules of Civil Procedure); *Spangler v. Southeastern Greyhound Lines*, 10 F.R.D. 591 (E.D. Tenn. 1950) (holding that nine days' notice between notice of intent to take depositions and trial date was unreasonable.)). The timing for noticing a deposition is governed by this Court's local rules. *See Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980) (quoting *Woods Constr. Co. v. Atlas Chem. Indus., Inc.*,

337 F.2d 888, 890 (10th Cir. 1964) ("[L]ocal rules of practice as adopted by the district court, 'have the force and effect of law, and are binding upon the parties and the court which promulgated them until they are changed in [an] appropriate manner.'") In this District, "[s]ervice of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) calendar days before the scheduled deposition." D.N.M.LR-Civ. 30.1. Here, Defendant noticed Plaintiff's December 9, 2024, deposition 21-days prior to the scheduled the deposition—seven (7) days more notice than the Local Rules prescribe. Defendant's deposition notice was therefore timely and reasonable under the circumstances.

Moreover, instead of complying with his discovery obligations when confronted by Defendant, Plaintiff attempted to blame Defense counsel and raise unsubstantiated claims and personal attacks. The Court views such tactics as further attempts to obfuscate and distract from the issues at hand. In addition, Plaintiff's continued insistence that Defendant's recitation of the procedural history is inaccurate and baseless has prolonged this litigation. Plaintiff's hyperbole to the contrary, *e.g.*, Defendant's Motion for Sanctions "continues to offer false narratives," "[Defendant] requested to motion for an extension on depositions, they have predictably reneged," "basing their plea on snippets [of] their self-serving narrative," "[Defendant] refused multiple requests to provide dates of availability," "abuse alone merits sanctions," "deny access to witnesses" "[Defense counsel] acted in bad faith, repeatedly, and this merits sanctions," "Curiously, [defense counsel] has withdrawn as counsel, so as not to have to answer for her misconduct. She merits sanctions," "[Defense counsel] presents an email chain that is not consistent with email protocol . . . [t]hus, [he] offers a fake email chain," "[Defense counsel] attempts to confuse the matter, all the while making threats," "blatant abuse of process goes beyond bad faith and veers towards maliciousness," "is insidious and merits sanctions," is of no persuasive

value in deciding these issues.

This is not a case where Plaintiff appeared to have inadvertently or clumsily failed to disclose information or provided a multitude of deposition dates in which Defendant failed to respect. In other words, Plaintiff did not act mistakenly; he acted with intent when he decided to produce incomplete interrogatories, fail to disclose medical providers, and refuse to sit for his deposition. Plaintiff's actions during discovery constitute a willful deception on both Defendant and the Court. The Court concludes that Plaintiff's fraudulent and obstructive conduct during discovery prejudiced Defendant.

2. Amount of Interference with Judicial Process

The Court finds that Plaintiff's conduct interfered with the judicial process. To allow continued obstruction of discovery by failure to produce complete interrogatories, medical records, and evading a deposition would eviscerate the truth seeking function of the judicial process. Similar to the findings by the District Court in *Chavez*, Plaintiff's unwillingness to participate honestly and fully in the discovery process "constituted willful deceit and made a mockery of the judicial process." *Chavez,* No. CIV 00-307, at *5 WJ/KBM (D.N.M. Aug. 18, 2003) (Doc. 170) (citing *Chambers*, 501 U.S. at 44).

It is clear that Plaintiff placed no value in the truth-finding process, notwithstanding that truth-finding is exactly the purpose of discovery. It is through the discovery process that parties can (1) evaluate the strengths and weakness of claims and defenses; (2) determine if a case can be settled; or (3) if it cannot be settled, prepare to meet the proofs at trial. *See, e.g., Vigil v. Stone, et al.*, No. 10-947 LFG/WDS (Doc. 51) (D.N.M. Dec. 5, 2011) (unpublished) (internal citations omitted). Intentionally withholding information, perhaps with the hope that the correct information would not be discovered is as much an obstruction of the judicial process as direct and blatant

untruths. Plaintiff's failure to answer interrogatories truthfully or at all, and his mandate for a conditional deposition or utter unwillingness to participate in a deposition, compelled the Court to consider Defendant's Motion for Sanctions, a motion that easily could have been avoided had Plaintiff cooperated in discovery as well as providing candid and truthful responses. The Court concludes that Plaintiff's misconduct significantly interfered with the judicial process.

3. Culpability of Litigant

There is no question that Plaintiff is culpable. He is the one who produced incomplete interrogatories regarding treating medical providers, failed to disclose Dr. Guzmán Pérez, did not produce executed HIPAA releases nor his Initial Disclosures and supplemented discovery responses until a court order nine (9) months after the fact. He is also the party responsible for a continuing delay in conducting depositions and moving the case forward. It is unknown if Plaintiff would have ever disclosed Dr. Guzmán Pérez absent the medical letter Plaintiff attached to his Motion for Sanctions. It is also unknown if Plaintiff would have willingly and cooperatively sat for a deposition absent a Court order. This Court previously informed Plaintiff that as a *pro se* litigant he was required "to become familiar with and comply with the Court's Local Rules and the Federal Rules of Civil Procedure." (Doc. 21) at 5. It is evident from Plaintiff's willful and intentional conduct that he did not and does not plan to adhere to the Rules.

4. Advance Warning of Possible Dismissal

The Court did not warn Plaintiff that if he failed to comply with the Local Rules and Federal Rules of Civil Procedure, his lawsuit could be dismissed with prejudice. Nor did the Court advise Plaintiff in advance that continued obstruction of the discovery process by giving incomplete interrogatories, delinquent production of discovery, and noncompliance with deposition notices could result in a severe sanction, including dismissal.

However, the fact that Plaintiff was not warned of the possibility of dismissal with prejudice does not mean the Court cannot dismiss the lawsuit. This is especially true when a party swears to tell the truth and then refuses to do so, withholds information, or lies. In *Chavez*, the Tenth Circuit addressed this exact issue and rejected the argument that a warning must be given before a case can be dismissed. With respect to the factor of whether a prior warning was necessary before the case was dismissed, the Court noted that because the perjurious testimony was given under oath, an additional warning would have been superfluous. Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely, to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it. *Chavez*, 402 F.3d at 1045 (internal citations and quotations omitted).

Here, Plaintiff does not argue he should have been warned about the possibility of sanctions for omitting information or obstructing the discovery process. Instead, he continues to assert an unsubstantiated claim that Defendant is at fault for portraying a fictitious recitation of the parties' agreements and interactions pertaining to discovery. (Doc. 56) at 1–3. The Court already determined, as discussed above, that Plaintiff omitted relevant information pertaining to his claims and damages, failed to comply with the Local Rules and Federal Rules of Civil Procedure, and willfully refused to sit for his deposition absent unrealistic conditional mandates. It is clear that when Plaintiff answered his interrogatories he swore under oath that the information was answered fully and accurately. *See* FED. R. CIV. P. 33(b)(3). He failed to do so. Under these circumstances, Plaintiff's violations are of such a grievous nature that no advance warning of dismissal is necessary.

5. Efficacy of Lesser Sanction

The Court concludes that dismissal of the lawsuit with prejudice would deter future

litigation abuse and punish the present abuse. It also would compensate the victims of the litigation abuse and streamline the court's docket. The Court recognizes that dismissal with prejudice defeats a litigant's right to access to the courts and that it should be used sparingly. *See Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6 (10th Cir. 1988). But, the Court is not required to first impose a lesser sanction before the sanction of dismissal with prejudice. In other words, it is not mandatory for the Court to impose a lesser sanction first. *Hobratschk v. Perretta*, 2000 U.S. App. LEXIS 5210, 2000 WL 313530, at *2 (10th Cir. 2000) (unpublished) (internal citations omitted).

Here, based on Plaintiff's continuing and flagrant discovery abuses, the Court determines that a lesser sanction than dismissal with prejudice, would not better serve the interests of justice. Stated differently, Plaintiff's misconduct and continued defense of that misconduct justify, not merely a monetary sanction or dismissal of a single claim, but instead, the sanction of dismissal with prejudice. Indeed, numerous cases support the Court's authority to dismiss a case for perjury or fabricating evidence. *See Vaughan v. Brigham*, 2011 U.S. Dist. LEXIS 72187, 2011 WL 2633369 (E.D. Ky July 5, 2011) (unpublished) (collecting cases). Plaintiff's deception goes beyond a single issue. Like *Sandoval*, Plaintiff's violation of the discovery rules and noncompliance goes to the core issues of liability and damages. Thus, after due consideration, the Court concludes that no penalty other than dismissal would serve the cause of justice and, therefore the Court recommends dismissal of the Plaintiff's claims as a result of his misconduct.

6. Plaintiff's Motion for Sanctions and Motion for a Hearing

Plaintiff seeks unidentified sanctions against Defendant for allegedly falsifying evidence to the Court, refusing to produce witnesses for depositions, threatening Plaintiff, and attempting to sabotage Plaintiff in order for the Court to dismiss his case. *See* (Doc. 56) at 1–3. The caption includes, "Motion for Hearing," but nowhere in the moving papers does Plaintiff request a hearing

or state why one might be necessary. In fact, Plaintiff does not identify to which motion, if any, he seeks oral arguments before the Court. Nevertheless, construing his pleading liberally, the Court finds Plaintiff's Motion for Sanctions and Motion for a Hearing are meritless. The Court has previously cautioned Plaintiff that unsubstantiated sweeping assertions and unseemly accusations, with no evidentiary basis, are not permitted. (Doc. 64) at 4. Here, Plaintiff's Motion for Sanctions and Motion for a Hearing are riddled with baseless allegations with no legal authority to support sanctions or a hearing. Accordingly, the Court recommends denying Plaintiff's Motion for Sanctions and Motion for a Hearing.

## IV. Recommended Disposition

For all of the above-stated reasons, the Court RECOMMENDS that Defendant's Motion for Sanctions, (Doc. 52), be GRANTED. The Court also RECOMMENDS that Plaintiff's Complaint and this action be dismissed, with prejudice, for discovery abuses. The Court further RECOMMENDS that Plaintiff's Motion for Sanctions and Motion for a Hearing, (Doc. 56), be DENIED.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**